IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YUSOFF ALLIAN, et al., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-5122 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| PERRY SMITH, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Yusoff Allian, Jonas Allian, and Marybeth Sauer (collectively "Plaintiffs") bring this legal malpractice action against Defendant Perry S. Smith, Jr., his firm, Defendant Wysocki & Smith (collectively, "Smith Defendants"), Defendant Christopher Maurer, and his firm Anderson & Associates, P.C., (collectively, "Maurer Defendants"). Currently before the court are motions by both sets of defendants [17, 20] to dismiss the respective claims against them with prejudice, save for Count VI. For reasons explained below, the Smith Defendants' motion to dismiss Count I is granted, and the Maurer Defendants' motion is granted in part and denied in part; Counts I and II are dismissed *without prejudice*. Plaintiffs are given until September 4, 2020 to file an amended complaint consistent with this opinion if they so choose. If Plaintiffs file an amended complaint, Defendants are given until October 2, 2020 to answer or otherwise plead. Counsel are directed to file a joint status report including a briefing schedule on a renewed motion to dismiss and/or a proposed discovery plan (if any Defendant files an answer to some or all of the amended complaint) no later than October 9, 2020.

**I.       Background**

For the purpose of deciding the motion to dismiss, the Court must accept as true all of the complaint's well-pleaded factual allegations and draw all reasonable inferences in favor of the Plaintiffs. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Unless otherwise noted, this background is taken from Plaintiffs' complaint.

This case represents the culmination of five years of litigation, staffed by three law firms across three separate courtrooms. The events precipitating this long-running dispute stem from a February 9, 2004 ischemic stroke suffered by Plaintiffs' father, Yusooff Allian ("Yusooff"), which left him with lasting cognitive deficits. The following month, contrary to medical advice, he travelled to Las Vegas and married his former mistress, Jean Marie Allian ("Jean Marie").

After his stroke, Yusooff became increasingly reliant upon Jean Marie, entrusting the management of his personal, legal, and financial affairs to her. For example, she wrote checks, paid bills, and engaged legal counsel in connection with changes to his estate plan. Plaintiffs allege that Jean Marie used Yusooff's reduced mental state to her own advantage, gaining his trust and obtaining for him a new attorney who drafted a new estate plan for him.

Plaintiffs contend that on August 25, 2004, while "suffering from stroke-related cognitive deficits," Yusooff executed a new will and trust, which bequeathed his estate to Jean Marie; he also changed the beneficiary designations on his banking, retirement, and investment accounts to Jean Marie, cutting his own children (*i.e.*, Plaintiffs) out of his estate plan. Plaintiffs assert that such changes are inconsistent with plans made prior to his cognitive decline and are a result of Jean Marie exercising undue influence and breaching her putative fiduciary duties. According to Plaintiffs, Yusooff's original estate plan had called for leaving all of his assets to them.

Yusooff died on March 27, 2014, roughly a decade after his stroke and marriage, and this veritable odyssey through the intricacies of Illinois probate procedure followed. At the time of his death, Yusooff's probate estate was worth approximately $1 million, and he had other assets (bank and investment accounts) worth approximately $3 million.

A probate estate was opened in Lake County, Illinois, No. 14 P 686. The state court admitted Yusooff's August 2004 will to probate and appointed Jean as executor. *Allian v. Allian*, No. 18-cv-3825, 17-1, at 49.[1] In an effort to recover their father's assets and estate Plaintiffs then hired the Smith Defendants to represent them in claims against Jean Marie and against the August 25, 2004 instruments.

On July 21, 2014, the Smith Defendants contested the August 25, 2004 will on behalf of Plaintiffs, arguing that Jean Marie exercised an undue influence over Yusooff, who they claimed was incapacitated when he executed the documents (the "Will Contest"). The Will Contest, however, did not include any claims relating to beneficiary designations or any other assets that passed outside the probate estate.

In the fall of 2016, Plaintiffs terminated their relationship with the Smith Defendants, hiring the Maurer Defendants to represent them in the Will Contest. In July 2017, the Maurer Defendants filed a "Petition to Invalidate Beneficiary Designations and Citation to Recover Assets" (the "Petition to Invalidate"). The Petition to Invalidate concerned all of Yusooff's non-probate assets, such as beneficiary designations. However, on November 29, 2017, the probate court dismissed the petition as untimely, reasoning that it should have been filed within six months of the opening

---

[1] "The Court may take judicial notice of matters of the public record, including court records, on a motion to dismiss brought under Rule 12(b)(6)." *Miszczyszyn v. JPMorgan Chase Bank, N.A.*, 2019 WL 1254912, at *1 n.1 (N.D. Ill. Mar. 19, 2019) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)); see also *Allian v. Allian*, 2018 WL 6591422, at *1–3 (N.D. Ill. Dec. 14, 2018) (taking judicial notice of and relying on the probate court record). The Court thus properly takes notice of the court records from the original probate action and the first federal case.

of Yusooff's estate or within two years of the date of his 2014 death. See *Allian v. Allian*, No. 18-cv-3825, [17-1 at 260] (order dismissing the Petition to Invalidate as untimely and inadequately pled). Rather than appealing within the required thirty-day period, the Maurer Defendants filed a motion for reconsideration of dismissal, which the probate court rejected in March 2018.

The probate court set a May 2018 trial date for the Will Contest and established deadlines for pretrial disclosures. Leading up to the trial, however, the Maurer Defendants allegedly "failed adequately to disclose the expert witnesses and other witnesses." On March 7, 2018, the probate court accordingly barred certain expert and lay witnesses from testifying in the Will Contest and narrowed the scope of testimony of others. The Maurer Defendants then voluntarily dismissed the Will Contest on May 2, 2018, soon before the trial was set to commence.

On May 31, 2018, the Maurer Defendants filed a new case against Jean Marie on Plaintiff's behalf in federal court alleging tortious interference with testamentary expectancies and breach of fiduciary duties related to Jean Marie's status as a beneficiary and handling of the estate. The Maurer Defendants' attorney-client relationship with Plaintiffs ended in November 2018 while a motion to dismiss was pending in the federal case. Judge Feinerman then dismissed this tort claim as barred by *res judicata*, reasoning that the probate court's November 2017 dismissal of the Petition to Invalidate was final, appealable, and arose from the same set of operative facts as the tort claim. *Allian v. Allian*, 2018 WL 6591422, at *6–8 (N.D. Ill. Dec. 14, 2018) ("*Allian I*").

Because the Petition to Invalidate, Will Contest, and federal claim were lost or abandoned, Plaintiffs did not recover any of the assets of their father or of his estate to which they believe they are entitled. Plaintiffs allege that, but for the negligence of their attorneys, they would have recovered approximately $1 million from the probate estate in the Will Contest, as well as the value of various other assets that passed outside of probate worth approximately $3 million.

4

The operative complaint lists six counts. Count I alleges that the Smith Defendants were negligent in not bringing suit related to the non-probate assets (*e.g.*, the beneficiary designations) within the statute of limitations period. Counts II through VI concern the Maurer Defendants' handling of the case. Specifically, Plaintiffs allege that the following (in)actions constituted legal malpractice: failure to bring the Petition to Invalidate within the statute of limitations (Count II); failure to appeal the November 2017 order dismissing the Petition to Invalidate (Count III); failure to adequately disclose witnesses in the Will Contest (Count IV); voluntary dismissal of the Will Contest (Count V); and filing the doomed federal case (Count VI). Here, the Smith and Maurer Defendants have moved to dismiss all the respective claims against them, except for Count VI. [17, at 1]; [20, at 1].

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555); see also *Zahn v. North American Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) ("We need not, however, accept as true any legal assertions or recital of the elements of a cause of action supported

by mere conclusory statements.") (quotation marks and citation omitted). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

### III. Analysis

In Illinois[2], attorneys may be held liable in tort for legal malpractice when plaintiffs demonstrate (1) that the defendant attorneys owed their client a duty of due care arising from the attorney-client relationship, (2) that the defendants breached that duty, (3) that the defendants' conduct proximately caused (4) an injury. *N. Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005); see also *Nelson v. Quarles & Brady, LLP*, 432 Ill. Dec. 182, 208 (Ill. App. Ct. 2018) (applying the same factors in a slightly different order). "To establish

---

[2] Although the events precipitating this lawsuit span several states, both parties assume that Illinois law applies. Because "Illinois courts apply forum law by default, and a choice-of-law determination is required only when the moving party has established an actual conflict between state law," the Court will apply Illinois law. *NAR Business Park, LLC v. Ozark Automotive Distributors, LLC*, 430 F. Supp. 443, 451 n.8 (N.D. Ill. 2019) (applying Illinois law and quoting *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Cas. Co.*, 381 Ill. Dec. 493, 500 (2014)) (internal quotation marks omitted).

proximate cause the plaintiff must essentially prove a 'case within a case,'" that "but for the attorney's negligence, the plaintiff would have prevailed in the underlying action." *Orzel v. Szewczyk*, 391 Ill. App. 3d 283, 290 (1st Dist. 2009) (quotation marks and citation omitted).[3] However, "[w]here there are successive negligent actors, the negligence of the second actor, under certain circumstances, may be deemed a superseding cause, which relieves the original negligent actor of liability." *Sobilo v. Manassa*, 479 F. Supp. 2d 805, 816 (N.D. Ill. 2007) (surveying Illinois law). As applied to instances of attorney malpractice, the former counsel cannot be found to have proximately caused a plaintiff's injury if the original claim remained viable for successor counsel when his or her representation ends. *Mihailovich v. Laatsch*, 359 F.3d 892, 905 (7th Cir. 2004).

### A.     Count I

According to Plaintiffs, the Petition to Invalidate ought to have been filed within six months of the opening of the probate case or within two years of Yusooff's death.[4] They claim that they would have succeeded in their underlying claims on the beneficiary accounts but for the Smith Defendants' failure to timely file a petition on the assets. The Smith Defendants argue that damages for the loss of these assets can be recovered in tort, and the statute of limitations for such torts is five years (and thus expired several years after their attorney-client relationship with Plaintiffs ended). Consequently, according to the Smith Defendants, Plaintiffs cannot demonstrate proximate causation, as they still had a viable route to the $3 million when they retained the Maurer Defendants. Plaintiffs retort that (a) the statute of limitations for contesting beneficiary

---

[3] For purposes of this motion to dismiss, the Court need not parse the exact relationship between proximate causation and but-for causation in legal malpractice suits arising under Illinois law.

[4] Pursuant to Rule 8(d), Plaintiffs may include alternate or inconsistent claims and theories. As will become evident, Count I (against the Smith Defendants) and Counts II and III (against the Maurer Defendants) are all mutually exclusive alternate theories.

designations is a question of fact that cannot be decided on a motion to dismiss, and (b) even if statute of limitations issues could be resolved on a motion to dismiss, Count I should not be dismissed because the statute of limitations is two years, not five.

Plaintiffs' first argument is a nonstarter. Though determinations of proximate causation can be fact intensive, attorney malpractice cases involving successor counsel "represent an exception," when "the plaintiff could not establish that the first attorney had proximately caused her injury." *Sobilo*, 479 F. Supp. 2d at 816. Indeed, if a cause of action remains viable at the time of discharge, "plaintiff[s] can prove no set of facts which connect defendant's conduct with any damage sustained by plaintiff." *Land v. Greenwood*, 133 Ill. App. 3d 537, 541 (1985). Attorney malpractice suits hinging on statutes of limitations questions are thus particularly ripe for decision on a motion to dismiss. *Harvey v. Mackay*, 109 Ill. App. 3d 582, 587 (1st Dist. 1982); *Land*, 133 Ill. App. 3d at 540 (affirming dismissal of complaint against former counsel, where successor counsel could have refiled claim at no prejudice to the client); see also *McGee v. Danz*, 261 Ill. App. 3d 232, 237 (4th Dist. 1994) (holding that former attorney could not be liable for legal malpractice for failing to file a claim, because the former-client plaintiff discharged defendant prior to the running of the four-year statute of limitations); *Mitchell v. Schain, Fursel, & Burney, Ltd.*, 332 Ill. App. 3d 618, 622 (1st Dist. 2002) (holding at summary judgment that a former attorney cannot be found liable where successor attorney had several years to refile case, but did not); *Sobilo*, 479 F. Supp. 2d at 815–16 (reviewing Illinois caselaw pertaining to causation in attorney malpractice cases, and concluding that the viability of a case can, in circumstances such as statutes of limitations, be determined as a matter of law).

That conclusion leads to Plaintiffs' second argument—namely, that the limitations window was two years and thus expired during the Smith Defendants' tenure as counsel.[5] Plaintiffs insist that by the time they hired the Maurer Defendants their claims were doomed; the Smith Defendants assert that the relevant tortious interference claims are instead governed by a five-year statute of limitations that presumably expired in early 2019. Because the proper statute of limitations for claims of tortious interference with beneficiary designations is five years, and Plaintiffs have not alleged any facts or made any argument as to why they could not have brought a parallel tort claim, Claim I is dismissed without prejudice.

Illinois law clearly distinguishes will contests and the tort of intentional interference with an expectancy of inheritance, particularly as it pertains to statutes of limitation. *Bjork v. O'Meara*, 369 Ill. Dec. 313, 317 (2013); *In re Estate of Ellis*, 236 Ill.2d 45, 51-52 (2009). Defendants argue that this case is a virtual rerun of *Bjork v. O'Meara*, 369 Ill. Dec. 313 (2013), in which the Illinois Supreme Court held that the five-year statute of limitations applied to claims for tortious interference, and that a plaintiff may be able to bring such a claim even if the asset in question was subject to probate and disposed of in a valid will contest. In *Bjork*, the plaintiff alleged that the decedent had planned and taken affirmative steps to name her as the beneficiary of a payable-on-

---

[5] Generally, where statute of limitations is an affirmative defense, dismissal of the complaint is appropriate where the case "is indisputably time barred." *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). Here, however, the statute of limitations is a key aspect of Plaintiffs' malpractice claim. Plaintiffs thus need to allege sufficient details from which the Court can plausibly infer that the Smith Defendants proximately caused Plaintiffs' injury (*i.e.*, tarried). As discussed below, the five-year-window that applies to this tortious interference claim began running when Plaintiffs learned of Jean Marie's alleged interference. Plaintiffs suggest that because their complaint is silent as to when they learned of the changes, their claim cannot be dismissed. Not so: Plaintiffs must allege sufficient details from which the Court can plausibly infer that the Smith Defendants caused their injury. Any inference that Plaintiffs *actually* learned about Jean Marie's chicanery roughly halfway between when the changes were made (the mid- 2000's) and Yusooff's death (2014) is entirely speculative. The Court therefore need not consider the email attached to the Smith Defendants' motion to dismiss, which they claim shows that the limitations window began running in 2014. Plaintiffs must allege sufficient facts regarding timing to survive a motion to dismiss. Because it is theoretically possible, however, that the five-year window closed in the midst of the Smith Defendants' representation, Plaintiffs are given leave to replead consistent with this opinion.

death account. 369 Ill. Dec. 313 at 317. Due to the defendants' interference, that never happened, and the defendants took everything pursuant to a residual clause in the decedent's will. *Id.* The Illinois Supreme Court explained that will contests and tortious interference claims not only are fundamentally different proceedings—one to set aside a will, another against an individual—but also that when "no adequate remedy was available through the probate proceeding" for the specific injury, the tort claim was permissible within the five-year statute of limitations to recover property or damages for its conversion. *Id.* at 321. Thus, even when the window for filing a will contest passes, a tort for intentional interference can still be filed within five years. *Id.* at 318 (citing *Ellis*, 236 Ill.2d at 50–52).

Just as the *Bjork* plaintiff sought to recover "money damages from [the defendant] to compensate her for the damages she sustained as a result" of tortious interference with her expectancy involving "a nonprobate asset separate and apart from his will," Plaintiffs have sought to recover the various assets outside their father's probate estate. See *id.*; [1, ¶¶ 13–14, 19]. Plaintiffs do not make any attempt to distinguish *Bjork*, except to say that any assertion that the statute of limitations is five years contradicts the allegations in the complaint, which claims that the limitations window was shorter. That argument must be rejected, because in ruling on a Rule 12(b)(6) motion to dismiss, the Court need not credit any legal conclusions in the complaint.[6] *E.g.*, *Zahn*, 815 F.3d at 1087.

---

[6] To be sure, *Bjork* does recognize that in some circumstances, a petition or citation may be brought before the probate court regarding non-probate assets within the standard will-contest statute of limitations. 369 Ill. Dec. at 320. Depending on the specific facts at issue, the failure to bring such a petition may preclude a future tortious interference action. *Id.* at 319–20 (discussing *Robinson v. First State Bank of Monticello*, 97 Ill. 2d 174 (1983)). But Plaintiffs do not advance any argument to distinguish *Bjork* or otherwise argue that a tort suit for interfering with an expectancy was not viable in fall 2016, when the Maurer Defendants took over. The Court need not wade too far into this unbriefed territory, however, because any inference that the beneficiary accounts could have been petitioned (and the failure to do so precluded a future tort suit) would be purely speculative in light of the allegations in the complaint. Cf. [1, ¶ 13–14, 19 (implying that certain aspects of the estate plan were designed such that some assets would always pass outside of probate, though

So, what to make of the fact that the probate court dismissed the Petition to Invalidate as untimely? Plaintiffs argue that this at the very least raises a question of fact that would preclude dismissal. As a federal court sitting in diversity, however, the Court looks to the Illinois Supreme Court's decisions, which have repeatedly held that the five-year limitations period applies for tortious interference claims that are litigated outside of probate. Plaintiffs have not mustered any argument that a tortious interference claim was unavailable prior to the probate court's dismissal of the Petition to Invalidate, or otherwise attempted to distinguish the facts alleged here from those at issue in *Bjork*. Accordingly, based on the arguments before the Court and allegations in the complaint, any inference that the Smith Defendants' failure to file a petition as opposed to tort suit proximately caused Plaintiffs' injury (the loss of the $3 million) would be entirely speculative. Count I is dismissed without prejudice to replead consistent with this opinion.

### B. Counts II and III

Plaintiffs' Counts II and III present alternate theories for why the Maurer Defendants are to blame for the loss of the beneficiary accounts. It is indisputable that any claim on Yusooff's beneficiary accounts was no longer viable by the end of the relationship between Plaintiffs and the Maurer Defendants. See *Allian I*, 2018 WL 6591422, at *4–8 (holding that these claims had been barred by *res judicata* for at least several months before the Maurer Defendants left). Nonetheless, the Maurer Defendants moved to dismiss, rather boldly, on the same grounds as the Smith Defendants—that *Bjork* establishes a five-year limitations window, so the tortious interference

---

some of these allegations are themselves conclusory)]. In this vein, Plaintiffs also argue that the subsequent dismissal of the tort action on *res judicata* grounds in *Allian I* shows that the limitations window was not five years. But to the extent that any inferences can be drawn from that case, they actually bolster the Smith Defendants' argument: Judge Feinerman did *not* hold that the tortious interference claim was time barred, and instead dismissed on the ground that the subject matter of the tort case was too similar to the Petition to Invalidate. *Allian I* says nothing about what would have happened had the Petition to Invalidate never been filed or had the Maurer Defendants appealed the probate court's dismissal. See *Allian I*, 2018 WL 6591422 at *4–8.

claim could have been refiled as late as February 2019, months after the Maurer Defendants were terminated as counsel in November 2018. As Plaintiffs point out, however, this argument ignores the fact that the tort suit was not viable because it was barred by *res judicata*, not the specific limitations issues identified in *Bjork*. Thus, even according to the Maurer Defendants' own arguments, Plaintiffs' complaint adequately pleads facts from which the Court can infer proximate causation: under *Bjork*, the original claim "was viable when [they] received it; it was not when [they] got through with it." *Land*, 113 Ill. App. 3d at 540.

The Maurer Defendants are correct, however, that Count II should be dismissed insofar as it alleges that the Maurer Defendants' timing is to blame for the dismissal of the tort suit. The statute of limitations for filing a petition or citation had, based on the complaint's allegations, passed by the time the Maurer Defendants began representing Plaintiffs, so there is nothing they could have done to salvage that strategy. And, even if the tort suit was lost under the Maurer Defendants' watch, it was not because of the five-year window set out in *Bjork*.[7] Plaintiffs have leave to replead Count II to include any allegations suggesting that the five-year statute of limitations ended in the midst of the Maurer Defendant's representation, or any other facts that are responsive to the Court's discussion of *Bjork* and the Smith Defendants' motion to dismiss.

    **C.**    **Counts IV and V**

Counts IV and V pertain to the Will Contest, not the non-probate assets, beneficiary designations, or Petition to Invalidate. Nonetheless, the Maurer Defendants premise their arguments on the five-year statute of limitations for tortious interference claims, not the applicable rules or standards in probate cases or Will Contests. Preliminarily, as above, the five-year statute

---

[7] As above, however, it is theoretically possible (although speculative based on the instant complaint) that the five-year window passed during the Maurer Defendants representation, so Plaintiffs have leave to replead based on timing.

of limitations for torts is not the sole determining factor of viability; rather, its expiration constitutes only one way by which claims become unviable. Claims barred by *res judicata* are not viable, either, and those are what Plaintiffs were (allegedly) left with by the end of Maurer Defendants' representation. And, in any event, the statute of limitations for will contests is two years, and the Maurer Defendants raise no argument as to why that limitation should not apply here given that, unlike in *Bjork*, a will contest was unquestionably the appropriate and available way of contesting this will—hence, the Will Contest. See *Bjork*, 369 Ill. Dec. at 319. The Maurer Defendants' motion to dismiss Counts IV and V is denied.[8]

## IV.    Conclusion

For the reasons set forth above, the Smith Defendants' motion to dismiss [17] is granted and the Maurer Defendants' motion to dismiss is granted in part. Counts I and II are dismissed *without prejudice*. Plaintiffs are given until September 4, 2020 to file an amended complaint consistent with this opinion if they so choose. If Plaintiffs file an amended complaint, Defendants are given until October 2, 2020 to answer or otherwise plead. Counsel are directed to file a joint status report including a briefing schedule on a renewed motion to dismiss and/or a proposed discovery plan (if any Defendant files an answer to some or all of the amended complaint) no later than October 9, 2020.

---

[8] This is not necessarily to say, however, that Plaintiffs have adequately stated claims in Counts IV and V— just that based on the arguments before the Court, dismissal of these counts is not warranted. See, *e.g.*, *Cannon v. Burge*, 2006 WL 273544, at *22 n.18 (N.D. Ill. Feb. 2, 2006). The Maurer Defendants also attempt to argue the merits in their reply brief—according to them, all of the claims against Jean Marie were doomed from the get-go, because Yusooff retained his cognitive capacity and actually continued to practice medicine following his stroke. Though it may be difficult for Plaintiffs to prevail at summary judgment or trial if the Maurer Defendants' allegations are true, it is not for the Court to weigh the Defendants' *ipse dixit* against the allegations in a complaint in ruling on a Rule 12(b)(6) motion.

Dated: August 6, 2020

_____
Robert M. Dow, Jr.
United States District Judge